UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH VIAL** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 20-1510** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "D"(5)** |

**REPORT AND RECOMMENDATION**

Plaintiff Elizabeth Vial filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

I.      **BACKGROUND**

Plaintiff filed her application for SSI on February 1, 2017, alleging a disability onset date of January 20, 2017. (Adm. Rec. at 15, 215). Plaintiff alleged disability due to diabetes, pedal neuropathy, neuropathy of the hands, renal failure Stage III, Barrett's esophagus, and hashimoto auto immune disease. (Tr. at 101). Plaintiff, born on June 10, 1965, was 51 years old on the date on which she alleged disability and the same age on the date that she filed her application. (*Id.* at 219). Plaintiff has a high-school education, (*id.* at 136), and she has past work experience as a retail store manager, a stock clerk, a displayer, and a waitress. (*Id.* at 114-15).

Defendant initially denied Plaintiff's application on March 21, 2018. (*Id.* at 140-44). Plaintiff sought an administrative hearing, which Defendant held on May 1, 2019. (*Id.* at 45-92). Plaintiff and a vocational expert ("VE"), a Ms. Harrison, testified at the hearing.

On March 7, 2019, the ALJ issued a decision in which he concluded that Plaintiff is not disabled. (Id. at 15-25). In the decision, the ALJ concluded that Plaintiff has the severe impairments of hypoglycemic episodes, diabetic neuropathy, renal failure, disorders of the right upper extremity, and disorders of the back. (*Id.* at 17). The ALJ ultimately held, however, that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 18). The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work activity as defined in 20 C.F.R. § 404.1567(a) meaning that Plaintiff can lift and/or carry up to ten pounds occasionally and less than ten pounds frequently; she can sit for six hours in an eight-hour day; and she can stand and/or walk for two hours in an eight-hour day. (*Id.* at 19). Plaintiff can also occasionally reach overhead with her right upper extremity and can use her bilateral hands occasionally for fine and gross manipulation. (*Id.*) Ultimately, the ALJ concluded that Plaintiff can perform the jobs of a customer complaint clerk, an information clerk, and an order clerk. (*Id.* at 25). The ALJ thus denied Plaintiff DIB and SSI. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. On March 18, 2020, the Appeals Council denied Plaintiff's request. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

2

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported

by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

### III.  ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and

5

examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

### IV.    ISSUE ON APPEAL

There are two issues on appeal:

(1)   Whether the ALJ properly determined Plaintiff's transferable skills and available jobs at step five of the sequential evaluation process.

(2)   Whether Plaintiff acquired skills in performance of her past relevant work.

### V.    ANALYSIS

#### 1.    Whether the ALJ properly determined Plaintiff's transferable skills and available jobs at step five of the sequential evaluation process.

Plaintiff contends that neither the testimony of the VE nor the decision of the ALJ reflects which of Plaintiff's transferable skills are actually transferable to which available jobs in the economy. For example, she maintains that "it is not intuitively obvious how 'building displays' provides skills that are transferable to an 'information clerk.'" (Doc. 21-2 at p. 2). Plaintiff argues that the ALJ failed to make findings concerning whether she possesses "transferable skills" as Social Security Ruling ("SSR") 82-41 expressly requires. Citing SSR 82-41, she notes that

> [w]hen a finding is made that a claimant has transferable skills, the acquired work skills *must be identified*, and specific occupations to which the acquired work skills are transferable *must be cited* in the . . . ALJ's decision. . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

6

SSR 82–41, 1982 WL 31389, at *7 (emphasis added). Plaintiff asserts that the language "must be identified" and "must be cited" are mandatory, and the ALJ failed to comply with SSR 82-41.

During the administrative hearing, the ALJ asked the VE if Plaintiff had any transferable skills from her previous employment. (Adm. Rec. at 82-83). The vocational expert responded that Plaintiff had the following skills: directing and supervising employees, monitoring sales activities, inventorying stock, and reordering. (*Id.* at 83). The VE also testified that Plaintiff exhibited the ability, through her past relevant work, to communicate with people, actively listen, coordinate, and think critically. (*Id.*). The ALJ then questioned the VE as to what jobs in the national economy such a person could perform, and the vocational expert testified that such a person could perform the jobs of customer complaint clerk, information clerk, and order clerk. (*Id.* at 83-84). In reliance on this substantial evidence, the ALJ determined at step five of the sequential evaluation process that the Plaintiff could perform said jobs in the national economy. (*Id.* at 24-25). Indeed, the value of a VE is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). The ALJ is entitled to rely on the VE's knowledge of job requirements. *See id.* at 146. Thus, the ALJ's decision, supported by VE testimony, is supported by substantial evidence. Despite Plaintiff's argument to the contrary, a district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.* at 135.

Plaintiff does not assert that she cannot perform the transferrable skills identified by the VE, nor does she contend that she did not gain these skills in the course of her past relevant work. As noted above, she devotes her memorandum to the argument that SSR 82-41 requires strict matching of specific skills to specific jobs. *See* Social SSR 82-41. A simple reading of the ALJ's opinion, however, reveals that he performed this critical evaluation. The ALJ identified the acquired skills (Adm. Rec. at 24) and identified the specific occupations that Plaintiff could perform as a result. (*Id.* at 25). Plaintiff would have the ALJ perform an elementary puzzle to match each skill to a specific job, but this is not the burden placed on the Commissioner. Moreover, Plaintiff's counsel only now deems it important to refute the acquired skills and the jobs identified under step five. Indeed, when offered the opportunity to cross examine the VE as to transferable skills or jobs that Plaintiff may be able to perform, Plaintiff's counsel declined to question her on this topic (*Id.* at 87). Plaintiff cannot now be heard to complain of the inadequacy of the ALJ's hypothetical question to the VE, which included Plaintiff's acquired transferable skills, when it was not deemed important enough to merit adversarial development during the administrative proceedings below. *See Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002) ("Furthermore, Masterson had the opportunity to cross-examine Marion about the hypothetical questions. Given Marion's testimony and Masterson's failure to refute the testimony, substantial evidence supports the ALJ's finding that Masterson could perform sedentary and light jobs not involving much stress or public interaction.").

Plaintiff also argues that she is disabled under Grid Rule 201.14.[1] However, and pretermitting the issue of transferable skills, the Grid Rules do not apply to this lawsuit as the RFC includes non-exertional limitations concerning Plaintiff's ability to reach and engage in fine and gross motor skills, which already erodes the occupational base. (*Id.* at 19). Use of the Grid Rules is appropriate only when it is established that a claimant suffers from exertional impairments, or that the non-exertional impairments do not significantly affect the RFC. *See Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir. 2002) ("However, use of the grid rules is only appropriate 'when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity.'" (citations omitted)). Limitations in reaching and motor skills are manipulative limitations that have a high probability of affecting the number of jobs available at the sedentary level. *See* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) (holding that limitations of reaching or handling may eliminate a large number of occupations a person could otherwise do, and the assistance of a vocational expert may be needed to determine the effects of the limitations). Here, the ALJ properly declined to use the Grid Rules to reach his conclusion and instead correctly questioned the VE as to Plaintiff's past work, transferable skills, and other jobs available in the national economy. (Adm. Rec. at 23-25). Thus, the Court finds that the decision of the ALJ is supported by substantial evidence.

---

[1] The Grid Rules are the Medical-Vocational Guidelines.

### 2. Whether Plaintiff acquired skills in performance of her past relevant work.

The VE testified to skills that Plaintiff had acquired in the performance of her past relevant work and then testified as to other jobs that a hypothetical individual with the same age, education, and vocational background (including transferable skills) could perform (*Id.* at 82-83). This testimony was based on the VE's review of the record as well as their presence during Plaintiff's testimony. (*Id.* at 82-84). Plaintiff again devotes her argument to semiotics to show that she either did not acquire these skills or that these are "aptitudes or traits" that are inherited rather than transferable skills. Curiously, Plaintiff does not dispute her ability to perform these skills, or as she refer to them, "aptitudes or traits." As a result, Plaintiff has failed to meet her burden to rebut the Commissioner's step five finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Plaintiff attempts to downplay her past work and the skills that she acquired, equating her ordering and inventory-control skills as a department manager for three or four years to those of millions of Americans and their ability to order items from Amazon. (*Id.* at 56-57). What Plaintiff fails to acknowledge, however, is the advantage of VE testimony, in that VEs are able to compare unique requirements of a specified job to reach a reasoned conclusion as to whether a claimant can perform specific jobs. *See Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). Indeed, contrary to Plaintiff's argument before this Court, the record reflects that Plaintiff gained the skills to which the VE relied and on which the ALJ relied – supervising employees. (*Id.* at 57, 258-59), monitoring sales (*id.* at 40), managing inventory and reordering (*id.* at 40, 56, 57), assisting customers (*id.* at 40, 116), and ordering. (*Id.* at 40, 56, 57). As for communication and critical thinking, the VE testified that these were

skills in addition the "major skills" that she had acquired as outlined above. (*Id.* at 83). Plaintiff's claim is without merit, and the ALJ's decision remains supported by substantial evidence.

## VI.     Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Rec. doc. 21) be **DENIED**, Defendant's Cross-Motion for Summary Judgment (Rec. doc. 22) be **GRANTED**, and Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

### NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[2]

New Orleans, Louisiana, this 16th day of _____November_____, 2021.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.